IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Mark T. Cox and Riddick S. Richardson,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>Time Warner Cable, Inc.,<br><br>　　　　Defendant. | C/A No. 3:12-cv-03333-JFA |
| Fred W. Elmore,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Time Warner Cable, Inc.,<br><br>　　　　Defendant. | C/A No. 4:12-cv-03407-JFA<br><br>**ORDER** |

Defendant Time Warner Cable, Inc., ("TWC") in two related cases, has moved to dismiss the complaints and to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"). Plaintiffs Mark T. Cox, Riddick S. Richardson, and Fred W. Elmore ("Plaintiffs") oppose TWC's motion. This court heard oral arguments on September 6, 2013. For the reasons set forth below, the court grants TWC's motion to dismiss and to compel arbitration.

**I.     Factual and Procedural History**

The underlying facts in this matter are not in dispute. Between 2005 and 2011, Plaintiffs entered into individual contracts with TWC, called "Residential Services Subscription Agreements" ("Subscriber Agreement"), under which Plaintiffs agreed to purchase and TWC agreed to provide cable and internet services. In the fall of 2012, TWC imposed a new

equipment lease fee for the modems that TWC provides its customers, and that new fee gave rise to the current action. In two complaints filed in this court pursuant to 28 U.S.C. § 1332, Plaintiffs assert that the new modem fee constituted a breach of the Subscriber Agreement for which they seek money damages, declaratory relief, and/or an injunction on behalf of themselves and all others similarly situated.

In response, TWC filed a motion to dismiss and to compel arbitration, which is the motion currently before this court. TWC asserts that Plaintiffs' claims are subject to arbitration based on an arbitration clause in the Subscriber Agreement. Plaintiffs oppose the motion, arguing that the arbitration clause is unenforceable for two reasons: First, the provision is illusory; second, the provision lacks mutual consideration.

## II.     Legal Standard

The FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The United States Supreme Court long has recognized a "liberal federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). This policy originates in Congress' view that arbitration resolves disputes more efficiently than litigation.[1] *Hightower v. GMRI, Inc.*, 272 F.3d 239, 241 (4th Cir. 2001).

---

[1] In this court's view, the longstanding federal policy favoring arbitration perhaps should be revisited. The policy arose during a time when a reasonable percentage of federal cases went to trial and a burgeoning federal case load made arbitration an attractive, less expensive, and quicker form of dispute resolution. Today, it appears that the arbitration dockets may be more congested than the dockets of most federal district courts. *See* Thomas J. Stipanowich, *Arbitration: "The New Litigation,"* 2010 U. Ill. L. Rev. 1, 1 (2010) (characterizing modern-day arbitration as "'judicialized,' formal, costly, time-consuming, and subject to hardball advocacy"). On several occasions in recent years, when this court has granted a motion to compel arbitration, retaining the case on its docket so that the award can be formalized in a judgment, the arbitration process has required two to three years to run its course. This court

In the Fourth Circuit, to compel arbitration under the FAA, a litigant must show the existence of: (1) a dispute between the parties; (2) a written agreement that includes an arbitration provision that purports to cover the dispute; (3) a relationship between the transaction, as evidenced by the agreement, and interstate or foreign commerce; and (4) "the failure, neglect or refusal of the other party" to arbitrate the dispute. *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002).

State law contract principles govern whether the requisite written arbitration agreement exists. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under South Carolina law, contract formation requires an offer, acceptance of the offer, and consideration. *Sauner v. Public Serv. Auth. of S.C.*, 581 S.E.2d 161, 166 (S.C. 2003). The party seeking to

---

would have been able to provide a much quicker forum for the resolution of those disputes. *See generally* Joseph F. Anderson, Jr., *Where Have You Gone Spot Mozingo? A Trial Judge's Lament over the Demise of the Civil Jury Trial*, 4 Fed. Cts. L. Rev. 99, 105–08 (2010).

Judge Patrick E. Higginbotham has observed that the dearth of civil trials resulting from the rise of arbitration as a dispute-resolving mechanism has served to reduce precedent established through conventional litigation:

> Ultimately, law unenforced by courts is no law. We need trials, and a steady stream of them, to ground our normative standards—to make them sufficiently clear that persons can abide by them in planning their affairs—and never face the courthouse—the ultimate settlement. Trials reduce disputes, and it is a profound mistake to view a trial as a failure of the system. A well conducted trial is its crowning achievement.

Patrick E. Higginbotham, *Judge Robert A. Ainsworth, Jr. Memorial Lecture, Loyola University School of Law: So Why Do We Call Them Trial Courts?*, 55 SMU L. Rev. 1405, 1423 (2002).

Additionally, anecdotal evidence exists as to potential defendants who will go to great lengths to avoid appearing before a jury in a traditional common law trial. *See* Judith Resnik, *Whither and Whether Adjudication?*, 86 B.U. L. Rev. 1101, 1135–36 (2006) (Professor Resnik relates a personal episode in which she discovered that her contract with her cell phone service provider stated that by opening the box containing her cell phone, she had agreed to mandatory arbitration of all disputes and that she would not participate in a class action against the provider. In the spirit of fairness, the provider agreed not to participate in a class against her.).

avoid arbitration bears the burden of showing that the arbitration clause is unenforceable.  *See, e.g., Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000).

While this court has the power to decide if a dispute is subject to arbitration, its inquiry is limited to two determinations: (1) whether the arbitration agreement is valid, and (2) whether the dispute falls within the scope of the arbitration agreement.  *See Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999).  The FAA requires a court, upon motion, to stay judicial proceedings involving disputes covered by an arbitration agreement.  9 U.S.C. § 3.  Even so, when an arbitration agreement covers all issues presented in a suit, a court may dismiss the case.  *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001).

**III.     Analysis**

In this matter, the parties contest neither the existence of a dispute nor the relationship between the transaction and interstate commerce, thereby satisfying two requirements under the FAA.  However, while TWC argues that Plaintiffs are bound by the arbitration clause contained in the Subscriber Agreement and that the dispute falls within the scope of the arbitration clause, Plaintiffs contend that they had not agreed to arbitrate this dispute with TWC.  Plaintiffs assert that TWC's arbitration clause is unenforceable because it is illusory and because it lacks mutual consideration.

Because Plaintiffs bear the burden of showing that the arbitration clause is unenforceable, this court will consider those arguments in order.

**A.     Plaintiffs' claim that TWC's promise is illusory**

At the center of Plaintiffs' argument are two sections within the Subscriber Agreement. First, in section 8 of the Subscriber Agreement, TWC outlines its authority to amend its

agreements with customers, including altering the price of services in some circumstances.[2] Second, in section 15, TWC lays out the arbitration clause at issue.[3]

Plaintiffs submit that, because TWC reserves the unfettered right to amend the Subscriber Agreement unilaterally, TWC's promise to bind itself to the arbitration clause contained within the Subscriber Agreement is illusory. Therefore, Plaintiffs contend, the parties never formed a valid arbitration agreement, and the clause is unenforceable.

In support of their argument, Plaintiffs in particular point to a Fourth Circuit Court of Appeals case as well as a case coming out of the Fifth Circuit Court of Appeals in which motions to compel arbitration were denied. *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202 (5th Cir.

---

[2] TWC's change-in-terms clause states:

"8. We May Change our Customer Agreements

(a) We may change our Customer Agreements by amending the on-line version of the relevant document. Unless you have entered into an Addendum that ensures a fixed price for a period of time (for instance, a Price Lock Guarantee Addendum), we may also change the prices for our services or the manner in which we charge for them.

(b) If you continue to use the Services following any change in our Customer Agreements, prices or other policies, you will have accepted the change (in other words, made them legally binding). If you do not agree to the changes, you will need to contact your local TWC office to cancel your Services.

(c) Any changes to our Customer Agreements are intended to be prospective only. In other words, the amended version of the relevant document only becomes binding on you as of the date that we make the change."

[3] The arbitration clause provides in part:

"15. Unless you Opt Out, You are Agreeing to Resolve Certain Disputes Through Arbitration

(a) [I]f we cannot resolve a Dispute with you, then, except as described elsewhere in Section 15, each of us agrees to submit the Dispute to the American Arbitration Association for resolution under its Commercial Arbitration Rules or, by separate mutual agreement, to another arbitration institution. As an alternative, you may bring your claim in your local "small claims" court, if its rules permit it. . . .

(e) You may opt out of this agreement's arbitration provision. If you do so, neither you nor TWC can require the other to participate in an arbitration proceeding. To opt out, you must notify TWC in writing within 30 days of the date that you first became subject to this arbitration provision."

2012); *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933 (4th Cir. 1999). In *Hooters of America v. Phillips*, the Fourth Circuit held that an employer's right to change the terms of an arbitration agreement without notice rendered the agreement unenforceable. *Hooters of Am., Inc.*, 173 F.3d at 941. In *Carey v. 24 Hour Fitness*, the Fifth Circuit found that a company's promise to arbitrate disputes with its employee was illusory because the company retained the right to amend the arbitration agreement unilaterally through a change-in-terms clause within the company's employee handbook. *Carey*, 669 F.3d at 208–09.

TWC submits that the arbitration clause is not illusory even if TWC retains the unilateral right to change it, as long as those changes do not apply retroactively.

This court finds that *Hooters* and *Carey* are distinguishable from the factual circumstances in the present cases in at least two important respects. First, the Fourth Circuit found the arbitration agreement in *Hooters* so one-sided and unfair to the employee that it was "unconscionable and void for reasons of public policy." *Hooters of Am., Inc.*, 173 F.3d at 936; *see also Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 601 (4th Cir. 2013) (rejecting arbitration because, among other reasons, only the buyer, not the seller, was bound). Here, Plaintiffs have asserted no claims of unconscionability. Further, the arbitration clause provides that arbitration must be conducted pursuant to rules of the American Arbitration Association; it states that both TWC and its customers agree to arbitrate; it gives customers a right to opt out; and it allows customers to use local small claims court in some circumstances.

Second, the Fifth Circuit's reasons for denying arbitration in *Carey*, applying Texas law, included the finding that changes to the arbitration agreement applied retroactively. *Carey*, 669 F.3d at 207–09. In contrast, in the cases before this court, section 8 of the Subscriber Agreement states that changes are intended to be prospective only. Additionally, courts in other circuits

6

have upheld agreements with similar "change-in-terms" language. *See, e.g., Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 173–74 (5th Cir. 2004) (rejecting challenges to arbitration clauses containing change-in-terms provisions when the company had to give notice of the change); *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 667–68 (6th Cir. 2003) (same); *Blair v. Scott Specialty Gases*, 283 F.3d 595, 604 (3d Cir. 2002) (same).

TWC also argues that an arbitrator—not a court—should hear Plaintiffs' illusoriness challenge in any event. TWC contends that the issue belongs before an arbitrator because the section giving TWC the unilateral right to make amendments applies to the Subscriber Agreement as a whole, not just to arbitration.

This court finds that argument persuasive. On the one hand, the Fourth Circuit has made clear that a judicial inquiry into the existence of an arbitration agreement, "while highly circumscribed, is not focused solely on an examination for contractual formation defects such as lack of mutual assent and want of consideration." *Hooters of Am., Inc.*, 173 F.3d at 938 (citing *Virginia Carolina Tools, Inc. v. Int'l Tool Supply, Inc.*, 984 F.2d 113, 118–19 (4th Cir. 1993)). On the other hand, however, "the grounds for revocation must relate specifically to the arbitration clause and not just to the contract as a whole." *Hooters of Am., Inc.*, 173 F.3d at 938 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402–04 (1967)). The United States Supreme Court has confirmed that principle. "[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006).

In the cases before this court, section 8 of the Subscriber Agreement outlines TWC's power to change the terms of its contracts with its customers. Except for situations in which a customer has entered into a fixed-price contract for a period of time, TWC reserves the right to

7

change any terms of the Subscriber Agreement, including price.  As a result, Plaintiffs argue that TWC's right to amend renders its promise to arbitrate illusory.  However, because the right to amend applies to the Subscriber Agreement as a whole, Plaintiffs' challenge to the arbitration clause becomes a challenge to the contract in its entirety.  Bound by precedent set by the Fourth Circuit and the United States Supreme Court, this court finds that Plaintiffs' claim that TWC has made an illusory promise belongs before an arbitrator.

### B.     Plaintiffs' claim that the arbitration clause lacks mutual consideration

Plaintiffs contend that the arbitration clause at issue lacks mutual consideration for two reasons: First, they argue that only the customers, including Plaintiffs, have an unfettered obligation to arbitrate all disputes with TWC; second, they submit that the arbitration clause itself must be supported by independent consideration.

In support of the first argument, Plaintiff points to the testimony of Christine Dzujna, TWC's senior director of Compliance and Legal Affairs, whom TWC presented as its witness for a deposition taken pursuant to Rule 30(b)(6) of Fed. R. Civ. P.  In her testimony, Ms. Dzujna indicated that TWC uses third parties to collect debt.  In particular, she testified that TWC "use[s] other means [than arbitration] to try to resolve disputes."  Relying on that testimony, Plaintiffs contend that TWC "admits it uses or otherwise resorts to the judicial process and dispute resolution mechanisms outside of arbitration."  TWC disputes that contention, asserting that "other means" involve individual negotiations with its subscribers to resolve complaints.

Based on this record and the absence of evidence presented at the hearing of any practice on the part of TWC to initiate litigation against its customers, this court finds no merit to Plaintiffs' argument that only customers were bound to arbitrate all disputes.

In a second argument, Plaintiffs submit that the arbitration clause itself must be supported by independent consideration, relying on the Fourth Circuit's finding in *Noohi v. Toll Brothers, Inc.*, 708 F.3d 599 (4th Cir. 2013), and on the South Carolina Supreme Court's holding in *Poole v. Incentives Unlimited, Inc.*, 548 S.E.2d 207 (S.C. 2001). In *Noohi*, the Fourth Circuit determined that, under Maryland law, an arbitration provision requires consideration independent of the contract underlying it. *Noohi*, 708 F.3d at 609. In *Poole*, the South Carolina Supreme Court held that separate consideration, in addition to the continued at-will employment, is necessary to enforce a covenant not to compete entered into after the start of employment. *Poole*, 548 S.E.2d at 209. Based on *Noohi* and *Poole*, Plaintiffs argue that the South Carolina Supreme Court would require separate consideration to support an arbitration agreement rather than the general consideration underlying the overall contract.

Without a case on point, this court relies on general principles of South Carolina contract law. "Generally, no special consideration need be singled out or apportioned for each separate provision in a contract." *Furse v. Timber Acquisition*, 401 S.E.2d 155, 156 (S.C. 1991) (internal citation omitted). Consideration undisputedly supported the underlying Subscriber Agreement. Therefore, the arbitration clause contained within the Subscriber Agreement requires no independent consideration. As a result, this court finds unpersuasive Plaintiffs' argument that the arbitration clause lacks mutual consideration.

**IV.    Conclusion**

This court finds that Plaintiffs have failed to carry their burden to show that the arbitration clause at issue is unenforceable. In light of the liberal policy favoring arbitration and because the complaints contain only arbitrable claims, this court hereby grants TWC's motion to dismiss and to compel arbitration. Accordingly, pursuant to 9 U.S.C. §§ 1–16, the court

9

dismisses these cases without prejudice and submits this matter to binding arbitration in accordance with the parties' agreement.

    IT IS SO ORDERED.

*Joseph F. Anderson, Jr.*

September 30, 2013          Joseph F. Anderson, Jr.
Columbia, South Carolina      United States District Judge